IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTH GROVE STREET PROPERTIES, LLC, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) |
| CITY OF ELGIN, et al., | ) ) |
| Defendants. | ) |

No. 15-cv-10925

Judge Andrea R. Wood

## MEMORANDUM OPINION AND ORDER

This case arises out of the municipal politics of a redevelopment project in the City of Elgin. Plaintiffs North Grove Street Properties, LLC, and Gasthaus Zur Linde, Inc., who own and operate a restaurant in the redevelopment zone, allege that the City of Elgin ("the City") and its local officials unconstitutionally retaliated against them for opposing proposed zoning changes related to the redevelopment project. Plaintiffs further claim that the City conspired with private parties involved in the redevelopment project to disrupt Plaintiffs' business operations. Based on these allegations, Plaintiffs have sued the City; David Kaptain, Mayor of Elgin; William A. Cogley, Elgin Corporation Counsel and Chief Development Officer; and Terry Gavin, Elgin City Council Member (together, "City Defendants") pursuant to 42 U.S.C. § 1983 for alleged violations of Plaintiffs' constitutional rights. Specifically, the Complaint alleges that City Defendants used the City's legislative, regulatory, and enforcement powers to retaliate in various ways against Plaintiffs for their exercise of their First Amendment rights in speaking at a zoning hearing and filing a state court lawsuit challenging the City's redevelopment plans. The Complaint also sets forth a civil conspiracy claim under Illinois common law, alleging that City Defendants and private parties Capstone Development Group, LLC ("Capstone"), William

Luchini (together with Capstone, "Capstone Defendants"), Souyoul Properties, Inc. ("Souyoul Properties"), and Richard Souyoul (together with Souyoul Properties, "Souyoul Defendants"), unlawfully agreed to cause Plaintiffs' restaurant to close down and to drive down the market value of the property. Defendants' respective motions to dismiss are now before the Court. For the reasons set forth below, the Court dismisses, without prejudice, the § 1983 claim against Defendants Kaptain, Cogley, and Gavin,[1] as well as the state law civil conspiracy claim against all Defendants. The motion to dismiss the § 1983 claim against the City, however, is denied.

## BACKGROUND[2]

### I.      The City of Elgin's Redevelopment Program

From 2000 to 2005, the City adopted a series of plans to redevelop certain commercial areas, including its riverfront and city center. (Compl. ¶¶ 20–22, Dkt. No. 1.) As part of this effort, the City passed tax-increment financing in an area designated as the Central Area TIF ("TIF District"). North Grove Street Properties, LLC owns a property in the TIF District—namely, 11-13-15 North Grove Street, Elgin, IL ("North Grove Building"). The first floor of the North Grove Building is leased to the Gasthaus, a restaurant-tavern operated by Gasthaus Zur Linde, Inc. Both companies are owned by Marco Muscarello. (*Id.* ¶¶ 3–4.)

Carrying on its redevelopment program, in 2014 the City sought to redevelop another building in the TIF District, the Tower Building. (*Id.* ¶ 24.) The owner of the Tower Building, the Stickling Foundation ("Stickling"), entered into an option agreement giving Souyoul Properties the right to buy the Tower Building for $1,000,000. After Stickling and Souyoul Properties

---

[1] Plaintiffs have stipulated to the dismissal without prejudice of their claims against Gavin. (Pls.' Response Br. at 2 n.1, Dkt. No. 42.)

[2] For the purposes of Defendants' motions to dismiss, the Court takes the allegations of the Complaint as true and draws all reasonable inferences in Plaintiffs' favor. *See, e.g.*, *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

2

executed this option agreement, Capstone entered into negotiations with the City to carry out the redevelopment. While the Tower Building had previously been a commercial space, Capstone proposed converting the Tower Building into all residential units. (*Id.* ¶¶ 25–27.) In October 2014, the City passed Resolution 14-153, which approved the Redevelopment Agreement between Capstone and the City. (*Id.* ¶ 27.) That Agreement provided that Capstone would apply to the Elgin City Council to rezone the Tower Building as residential, while the City would provide funding for the redevelopment project and would designate a certain number of parking spaces for use by the Tower Building. (*Id.*)

Capstone submitted its rezoning application and the matter came up for public hearing on December 1, 2014. Plaintiffs appeared at this hearing and "offered evidence, performed cross-examination, and made numerous objections" to Capstone's rezoning application. (*Id.* ¶¶ 32–33.) Despite Plaintiffs' objections, the Elgin City Council voted to recommend approval of Capstone's application. In short order, by mid-January 2015, the City Council passed the required ordinance and Capstone received its conditional use permit allowing it to convert the Tower Building into a residential complex. (*Id.* ¶¶ 34–36.) On March 13, 2015, Plaintiffs filed suit in the Circuit Court of Kane County, Illinois seeking a determination that the variance was improperly granted and that Capstone and the City had entered into an improper agreement. (*Id.* ¶ 38.)

## II. Defendants' Offers to Purchase the North Grove Building

Around February 21, 2015, prior to Plaintiffs filing suit in Illinois state court, Muscarello received a phone call from Neil Pitcher, allegedly an agent for Stickling. Pitcher suggested Plaintiffs sell their property to Capstone at $20 per square foot, the price at which the Tower Building was being sold. Pitcher offered to put Muscarello in touch with William Luchini, Capstone's principal. Muscarello declined this offer. (*Id.* ¶¶ 74–75.)

On February 28, 2015 and March 10, 2015, acting on behalf of the City in his role as Counsel and Chief Development Officer, Cogley contacted Plaintiffs and offered $260,000 for the North Grove Building. Muscarello countered that he and Plaintiffs would consider $960,000 or $800,000 along with a two-year free lease for the Gasthaus. Cogley responded that, if the City purchased the North Grove Building, it would not be interested in the Gasthaus continuing to operate in the location. (*Id.* ¶¶ 76–81.)

In late March or early April 2015, after Plaintiffs' state court suit had been filed, Muscarello was contacted by Dave Shelton, a long-time business partner. Shelton stated that he had been contacted by Richard Souyoul, who asked him to serve as an intermediary for negotiating a sale of the North Grove Building. Shelton also represented that he could negotiate a purchase price for the North Grove Building of around $500,000. After consulting with his counsel, Muscarello informed Shelton that he did not want Shelton serving as an intermediary in the sale of the property. (*Id.* ¶¶ 83–85.)

On August 13, 2015, Plaintiffs contacted Cogley to determine if the City was interested in purchasing the property. Cogley responded that the City was not, but suggested that Capstone might be and that he would notify Luchini, Capstone's principal. Luchini never contacted Plaintiffs in response. (*Id.* ¶¶ 87–88.)

On August 18, 2015, Souyoul contacted Muscarello to inform him that, though neither Souyoul Properties nor Capstone needed to acquire the North Grove Building for the redevelopment project to proceed, Souyoul Properties and Capstone would consider buying the North Grove Building at $20 per square foot, the same price at which Souyoul Properties was purchasing the Tower Building. Muscarello rejected this offer as well. (*Id.* ¶¶ 88.)

### III. Plaintiffs' Allegations of Retaliatory Conduct

After Plaintiffs filed suit, in April 2015, the Gasthaus applied to the Local Liquor Control Commission ("LLCC") to renew its exterior liquor sales permit. The LLCC's membership is made up of the members of the Elgin City Council, with the Mayor—Kaptain—serving as the Chairman. The Gasthaus's application came up for hearing on May 6, 2015. As in prior years the Gasthaus's permit had been granted without issue or the need for a personal appearance, the Gasthaus did not send a representative. Unlike prior hearings, however, this time the LLCC denied the Gasthaus's application. (*Id.* ¶¶ 41–42.) During the hearing, Council Member Gavin mocked the Plaintiffs, stating:

> 'Oh, you're picking on us and we're going to file a lawsuit,' which seems to be a hobby with these folks. I don't know if I can say that but I just did.

(*Id.* ¶ 43.)

Two days later, on May 8, 2015, the City terminated the Right-of-Way Encroachment License Agreement between the City and the Gasthaus. This License had provided the Gasthaus with access to the space in front of its premises for the purpose of conducting exterior sales. (*Id.* ¶ 44.)

On May 27, 2015, the City, acting through Kaptain and the City Council, passed an ordinance amending the Elgin Municipal Code to preclude U-Class liquor license holders from obtaining an exterior liquor sales permit. Cogley, though not a voting member of the City Council, advised in favor of this change to the Municipal Code, as did the LLCC. (*Id.* ¶ 46.) At the time, the Gasthaus was the only holder of a U-Class license and thus the only business directly affected by the change. (*Id.* ¶ 47.)

In July 2015, Plaintiffs' counsel attended an LLCC meeting to challenge the denial of the Gasthaus's exterior liquor sales permit application. (*Id.* ¶ 50) During the course of the meeting,

Cogley, Kaptain, and other City Council members "publicly lambasted" Plaintiffs' counsel for his representation of the Gasthaus. (*Id.*) Kaptain also threatened Plaintiffs' counsel, stating:

> [I]f you accuse me of connecting those two [*i.e.*, the opposition to the zoning variance afforded to Capstone Defendants and the subsequent amendment of the U-Class liquor license provisions of the Elgin Municipal Code], you and I are going to go to scrappin' because I take that as a personal offense to me.

(*Id.* ¶ 51.) After that meeting, the City sent marked police cars and officers on foot to the area around the Gasthaus for several hours at a time. (*Id.* ¶¶ 52, 66–68.) Plaintiffs allege that this was done to intimidate Plaintiffs and scare away the Gasthaus's customers. (*Id.* ¶¶ 52, 67.)

On August 26, 2015, the City passed another ordinance making further changes to its Municipal Code's liquor license provisions. This ordinance (1) required U-Class license holders to derive 50% or more of their monthly gross revenue from serving meals and (2) scaled back the closing time for U-Class licensees—previously U-Class licensees could be open until 3:00 am every day, but now they could only stay open only until 1:00 a.m. on weekdays and 2:00 a.m. on weekends. The scaled-back closing times were the same required closing times for the other available liquor licenses. (*Id.* ¶ 53.) This new ordinance was detrimental to the Gasthaus because it fell short of the 50% gross revenue threshold and thus was no longer eligible for a U-Class license. (*Id.* ¶ 54.) Furthermore, the scaled-back closing times eliminated the Gasthaus's ability, as the only U-Class licensee in Elgin, to stay open later than other liquor-serving establishments. (*Id.* ¶ 53.)

During that City Council meeting, the City also passed an ordinance terminating Special Service Area Number Two. The termination of this Special Service Area, Plaintiffs claim, "t[ook] away certain protections and rights for the parking lots" their payments were used to construct and maintain. (*Id.* ¶¶ 59–61.) On the same day, the LLCC also filed a complaint against the Gasthaus

6

for permitting, in violation of the Municipal Code, 10 instances of disorderly conduct to occur on its premises over 12 months. (*Id.* ¶ 63.)

* * *

Thereafter, on September 26, 2015, the Gasthaus permanently closed. Plaintiffs then brought this suit, asserting two claims. (*Id.* ¶ 64.) The first claim, brought pursuant to § 1983, is asserted against the City Defendants for constitutional violations relating to City Defendants' alleged retaliation against Plaintiffs' exercise of their First Amendment rights. The second claim, brought under Illinois state law, asserts that the City entered into a civil conspiracy with Capstone Defendants and Souyoul Defendants to close down Plaintiffs' restaurant and devalue Plaintiffs' property.

**DISCUSSION**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a short plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a). To survive a Rule 12(b)(6) motion, this short plain statement must overcome two hurdles. First, the complaint's factual allegations must be enough to give the defendant fair notice of the claim and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, the complaint must contain sufficient allegations based on more than speculation to state a claim for relief that is plausible on its face. *Id.* This pleading standard does not necessarily require a complaint to contain "detailed factual allegations." *Id.* (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

**I.     Plaintiffs' § 1983 Claim**

To state a First Amendment retaliation claim under § 1983, Plaintiffs "must plausibly allege that (1) [they] engaged in activity protected by the First Amendment, (2) [they] suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to retaliate." *Santana v. Cook Cty. Bd. of Review*, 679 F.3d 614, 622 (7th Cir. 2012) (internal quotations omitted). As discussed above, Plaintiffs' § 1983 claim is asserted only against City Defendants.[3]

City Defendants first argue that Plaintiffs' § 1983 claim must be dismissed because retaliation claims based on the filing of state lawsuits are not actionable under that statute. This argument must be rejected. Though the Seventh Circuit has suggested that retaliation claims based on filing lawsuits in state court may not be actionable under § 1983, *Batagiannis v. West Lafayette Cmty. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir. 2006), the Complaint also alleges that City Defendants' retaliation was based on Plaintiffs' appearance at the December 1, 2014 rezoning hearing, where Plaintiffs expressed numerous objections to the City and Capstone's redevelopment program. Plaintiffs' exercise of their First Amendment rights at the zoning hearing is, by itself, sufficient to anchor their claims of unconstitutional retaliation.

---

[3] Plaintiffs have sued Kaptain and Cogley in both their individual and official capacities. (Compl. ¶ 1, Dkt. No. 1.) A § 1983 action allows a party to sue a "person" in his or her individual or official capacity. *Monell v. Dept. of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Official capacity suits represent only "another way of pleading an action against an entity of which an officer is an agent." *Id.* at 690 n.55. In effect, an official capacity suit is not a suit against the government official individually, but rather against the local government entity. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). By contrast, an individual capacity suit seeks to impose personal liability on an individual who, under the color of state law, custom, or policy, violates a party's constitutional rights. *Id.* Here, because Plaintiffs have also named the City as a Defendant, the claims against Kaptain and Cogley in their official capacities are duplicative of the claim against the City and properly dismissed. *See Alicea v. City of Chicago*, No. 02-cv-00027, 2002 WL 1021553, at *4 (N.D. Ill. May 20, 2002).

City Defendants next argue that all of Kaptain's and Cogley's alleged retaliatory conduct is covered by absolute legislative immunity and absolute judicial immunity.[4] Because these are absolute immunities from *suit*, the Court properly considers these defenses at the Rule 12(b)(6) motion to dismiss stage. *Shaikh v. City of Chicago*, No. 00-cv-04235, 2001 WL 123784, at *7 (N.D. Ill. Feb. 13, 2001) (citing *Harrell v. Cook*, 169 F.3d 428, 431 (7th Cir. 1999)); *Schor v. Daley*, 563 F. Supp. 2d 893, 901 (N.D. Ill. 2008), *aff'd sub nom. Schor v. City Of Chicago*, 576 F.3d 775 (7th Cir. 2009) (clarifying that absolute legislative immunity is immunity "from suit"); *Anderson v. Simon*, 217 F.3d 472, 475 (7th Cir. 2000) (clarifying that absolute judicial immunity is immunity "from suit").

Plaintiffs' allegations of retaliatory conduct by Kaptain and Cogley include: the proposing and passing of ordinances amending various parts of the Municipal Code's liquor license provisions detrimental to the Gasthaus (Compl. ¶¶ 46, 53, Dkt. No. 1); the proposing and passing of an ordinance terminating Special Services Area Number 2, which reduced Plaintiffs' parking privileges near the Gasthaus (*id.* ¶ 59); the LLCC's denial of the Gasthaus's exterior liquor sales permit application (*id.* ¶ 42); the LLCC's filing of a complaint against the Gasthaus for the accumulation of disorderly conduct violations (*id.* ¶ 63); Kaptain's and Cogley's alleged "browbeating," "lambasting," and threatening of Plaintiffs' counsel at an LLCC meeting (*id.* ¶¶ 50, 51); the increasing of police presence near the Gasthaus to intimidate Plaintiffs and

---

[4] City Defendants do not assert any immunity on behalf of the City itself. *See Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) ("Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc."); *DeGenova v. Sheriff of DuPage Cty.*, 18 F. Supp. 2d 848, 849 (N.D. Ill. 1998), *aff'd*, 209 F.3d 973 (7th Cir. 2000) ("Unlike states, local governments do not have the protection of sovereign immunity and are liable under § 1983 for those of its policies that cause constitutional torts.").

interfere with their business (*id.* ¶¶ 52, 66); and the City's termination of the Gasthaus's Right-of-Way Encroachment License Agreement (*id.* ¶ 44).

For ease of analysis, the Court groups these allegations as follows: (A) Kaptain's and Cogley's actions in connection with proposing, advising on, and passing certain ordinances while on the City Council; (B) Kaptain's and Cogley's actions in their roles on the LLCC; and (C) the City's actions in increasing the police presence near the Gasthaus and terminating the Gasthaus's Right-of-Way Encroachment License Agreement.

### A. Kaptain's and Cogley's Actions on the City Council

As the Supreme Court held in *Bogan v. Scott-Harris*, 523 U.S. 44, 49 (1998), "local legislators are [] absolutely immune from suit under § 1983 for their legislative activities." Moreover, absolute legislative immunity attaches to all attendant actions of legislation, including voting on laws, proposing and discussing laws in a legislative session, and any other actions that are "integral steps in the legislative process." *Id.* at 55. Indeed, legislative immunity extends to officials outside the legislative branch when they perform legislative functions. *Id.* Thus, Kaptain's and Cogley's involvement in proposing, advising on, and passing certain ordinances on the City Council is legislative conduct entitled to absolute immunity.

Plaintiffs contend that this conduct was only speciously legislative—that, as the Gasthaus was in fact the only U-Class license holder affected by the legislation, the ordinances were instead administrative actions. This argument fails. The ordinances are clearly prospective in nature and set forth rules that affect all residents and establishments in the area and therefore meet the definition of legislation. *See Coffey v. Quinn*, 578 F. Supp. 1464, 1465 (N.D. Ill. 1983) (quoting *Three Rivers Cablevision v. City of Pittsburgh*, 502 F. Supp. 1118, 1136 (W.D. Pa. 1980), that "[l]egislative acts are said to be broad, general policy statements establishing guidelines by which

the future conduct of an entire group of persons falling within a particular classification will be judged"). Though the Gasthaus may have been the only U-Class license holder at the time, the effects of the ordinances extended beyond the Gasthaus. For example, the restrictions on the times that U-Class license holders can remain open for business affected not only the Gasthaus, but also the Gasthaus's neighbors as well as other prospective U-Class licensees. Thus, these ordinances, and any attendant conduct related to them, are covered by absolute legislative immunity.

Plaintiffs further argue that, as Cogley was not himself a legislator, his alleged strategizing and advising on how to hurt Plaintiffs' interests is not covered by absolute legislative immunity. This is mistaken. In *Gravel v. United States*, a case concerning the legislative immunity conferred by the Constitution's Speech and Debate Clause, the Supreme Court stated that such immunity extended to legislative aides of Members of the U.S. Congress "insofar as the conduct of the [aides] would be a protected legislative act if performed by the Member[s]" themselves. 408 U.S. 606, 618 (1972). Lower courts have extended the protections of legislative immunity to aides in municipal government. *See, e.g.*, *Hudson v. Burke*, 617 F. Supp. 1501, 1509–10 (N.D. Ill. 1985), *aff'd*, 913 F.2d 427 (7th Cir. 1990) (stating, in a case involving a City of Chicago Alderman, "[t]he immunity has also been extended to legislative aids or assistants . . . ."); *Rini v. Zwirn*, 886 F. Supp. 270, 284 (E.D.N.Y. 1995) (citing *Gravel*, 408 U.S. at 618, and *Hudson*, 617 F. Supp. 1509–10). This Court agrees that the principle embodied by *Gavel* naturally extends to the local level. As Cogley's role was as an advisor and aide to the City Council, his communications to the City Council about what laws to pass and why to pass them—which would be protected if made by a legislator—are entitled to absolute legislative immunity.

### B. Kaptain's and Cogley's Actions on the LLCC

The Seventh Circuit has held that, based on the doctrine of absolute judicial immunity, "an Illinois local liquor control commissioner enjoys absolute immunity when deciding whether to renew or revoke a liquor license." *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004) (citing *Reed v. Vill. of Shorewood*, 704 F.2d 943, 951 (7th Cir. 1983)). Therefore, insofar as Kaptain and Cogley were involved with the LLCC's vote to deny the Gasthaus's exterior liquor sales application, they are protected by absolute judicial immunity. Similarly, Kaptain and Cogley are immune from suit for any role they had in the LLCC filing a complaint against the Gasthaus for accumulation of disorderly conduct violations.[5] *See Nance v. City of Elgin*, No. 06-cv-06608, 2007 WL 2274708, at *4 (N.D. Ill. Aug. 3, 2007). Finally, judicial immunity extends to any statements that Kaptain and Cogley may have made during the LLCC meeting. *See Briscoe v. LaHue*, 663 F.2d 713, 722 (7th Cir. 1981), *aff'd*, 460 U.S. 325 (1983) ("The doctrine of judicial immunity[] extends to all acts performed by judges in their judicial capacity."); *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (extending judicial immunity to other officers integrally related to the judicial process).

### C. Other Allegations of Retaliatory Conduct

The other allegedly retaliatory conduct—namely, that the City increased the police presence near the Gasthaus and terminated the Gasthaus's Right-of-Way Encroachment License Agreement—are not covered by any absolute immunity, as both are administrative actions that are subject to liability under § 1983. *See, e.g.*, *Rateree v. Rockett*, 630 F. Supp. 763, 770 (N.D. Ill. 1986) ("As a general rule, if legislative enactments 'affect particular and not general interests,'

---

[5] The allegations against Kaptain and Cogley relating to the LLCC fail for another reason: Plaintiffs' Complaint does not specify with sufficient particularity what involvement Kaptain or Cogley had in denying the Gasthaus's exterior liquor sales permit and the LLCC's filing of a complaint against the Gasthaus.

they are 'administrative.'"). However, the Complaint does not specify Kaptain's and Cogley's involvement in these actions undertaken by the City. As such, there are no remaining allegations against Kaptain or Cogley for which they are not immune that can sustain Plaintiffs' § 1983 claim against them.

*   *   *

In sum, Plaintiffs' § 1983 claim against Kaptain, Cogley, and Gavin are dismissed. However, as City Defendants have offered no meritorious arguments requiring dismissal of the § 1983 claim against the City, that claim will survive.

## II.    Plaintiffs' Illinois State Law Civil Conspiracy Claim

Under Illinois law, civil conspiracy is defined as "a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means." *Buckner v. Atl. Plant Maint., Inc.*, 694 N.E.2d 565, 571 (1998). In order to state a claim for civil conspiracy, a plaintiff must allege an agreement *and* a tortious act committed in furtherance of that agreement. *Boothe v. Sherman*, 66 F. Supp. 3d 1069, 1079 (N.D. Ill. 2014) (citing *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 257–58 (1999)). "A defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894–95 (1994). Therefore, to sustain the claim, the agreement that is alleged must be an agreement to accomplish by concerted action "*an unlawful purpose*" or an agreement to accomplish by concerted action a lawful purpose "*by unlawful means.*" *Buckner*, 694 N.E.2d at 571 (emphasis added). Plaintiffs' Illinois state law conspiracy claim is asserted against all Defendants, who Plaintiffs contend were working in concert to "cause the Gasthaus to be closed" and "drive down the value of the North Grove [Building]." (Compl. ¶¶ 2, 90, Dkt. No. 1.) The

Court first considers the civil conspiracy claims against Capstone and Souyoul Defendants, and then against City Defendants.

### A. Capstone Defendants and Souyoul Defendants

Though the Complaint does allege that Capstone Defendants and Souyoul Defendants entered into an agreement with the City to redevelop parts of Elgin, it does not state facts sufficient to allege that Capstone Defendants or Souyoul Defendants entered into an agreement to close the Gasthaus or devalue the North Grove Building. There are no allegations at all that concern Capstone or Souyoul Defendants' views about the continuing operation of the Gasthaus. And as to the North Grove Building, there are only allegations that Capstone Defendants and Souyoul Defendants offered Plaintiffs a much lower purchase price for the property than Plaintiffs believed to be the fair market value. It could be, however, that Capstone and Souyoul Defendants simply had a different assessment of the fair market value, not that they wished to *lower* the fair market value of the North Grove Building. Regardless, even if the Complaint did set forth facts sufficient to allege the existence of an agreement to cause the Gasthaus to close or to lower the market value of the North Grove Building, those are not unlawful purposes if effectuated through lawful means.[6] Therefore to state a claim for civil conspiracy, the Complaint must allege that Defendants entered into an agreement to undertake *unlawful means*. Here too the Complaint fails.

Plaintiffs do not plausibly allege that either Capstone Defendants or Souyoul Defendants themselves undertook any tortious or unlawful action. While the Complaint does state that Capstone Defendants and Souyoul Defendants made low offers to Plaintiffs for the purchase of the North Grove Building, this is not unlawful conduct. Rather, it is a common negotiation tactic.

---

[6] In their Response, Plaintiffs suggest that the unlawful purpose of the alleged conspiracy was to "silenc[e] Plaintiffs' opposition to the proposed redevelopment by ousting Plaintiffs from the Subject Property." (Pls.' Response Br. at 33, Dkt. No. 42.) However, Plaintiffs have also failed to state any facts that support that Capstone Defendants or Souyoul Defendants ever entered into an agreement for that purpose.

The Complaint also alleges that Richard Souyoul made a fraudulent misrepresentation to Plaintiffs when he stated that Capstone Defendants and Souyoul Defendants did not need the North Grove Building for their redevelopment project to be successful. (Compl. ¶ 91, Dkt. No. 1.) But this too is insufficient to support that these Defendants used unlawful means. Under Illinois law, "[t]o support an action for fraud, the alleged misrepresentation must be one of fact and not an expression of opinion." *People ex rel. Peters v. Murphy–Knight*, 618 N.E.2d 459, 463 (Ill. App. Ct. 1993). A statement that "merely expresses an opinion or that relates to future or contingent events, rather than past or present facts, does not constitute an actionable representation." *West v. W. Cas. and Sur. Co.*, 846 F.2d 387, 393 (7th Cir. 1988); *see also Murphy–Knight*, 618 N.E.2d at 463 ("Statements regarding future events are considered opinions, not statements of fact."). Richard Souyoul's alleged statement was a prediction of the success of the City's redevelopment project, which not only relates to future or contingent events but is also an opinion grounded in his own subjective standards of success. It is not actionable as a fraudulent misrepresentation; it was merely posturing in negotiation.

Plaintiffs contend that, regardless of whether Capstone and Souyoul Defendants performed any tortious or unlawful acts themselves, because of their involvement in the civil conspiracy they are liable for the tortious and unlawful acts of City Defendants. The problem with this argument is that Plaintiffs' Complaint still fails at the first step, for it does not state facts sufficient to allege plausibly that Capstone or Souyoul Defendants entered into an agreement *to undertake any unlawful means*. Nowhere in the Complaint have Plaintiffs pleaded facts to support that Capstone Defendants or Souyoul Defendants agreed with City Defendants that their purposes were to be furthered by tortious or unlawful actions. Accordingly, the claims for civil conspiracy against Capstone and Souyoul Defendants are dismissed.

15

### B. The Individual City Defendants

Plaintiffs' state law civil conspiracy claim against Kaptain and Cogley is barred by the various immunities codified in the Local Governmental and Governmental Employees Tort Immunity Act ("ILTA"), 745 ILCS 10/2-101 *et seq.*, as well as the doctrine of judicial immunity.[7] As before, the Court groups the allegations for ease of analysis but this time mirroring the immunities available under Illinois state law: (1) Kaptain's and Cogley's actions in connection with proposing, advising on, and passing certain ordinances detrimental to the Gasthaus and Plaintiffs; (2) Kaptain's and Cogley's involvement in the LLCC's denial of the Gasthaus's exterior liquor sales permit application and the City's termination of the Gasthaus's Right-of-Way Encroachment License Agreement; and (3) Kaptain's and Cogley's other conduct on the LLCC, including any inflammatory remarks they may have made at LLCC meetings.

#### 1. City Council Ordinances

Section 2-205 of the ILTA states that "[a] public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment . . . ." 745 ILCS 10/2-205; *see also* 745 ILCS 10/1-203 (stating that the term "enactment" includes ordinances). Section 2-201 provides that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. Thus, Kaptain and Cogley cannot be held liable in tort for any injuries related to their legislative activity in proposing, providing advice on, or—in the case of Kaptain—voting on the allegedly retaliatory ordinances.

---

[7] Just as with absolute legislative and judicial immunity in the § 1983 context, the ILTA provides for immunity from suit. *Brooks v. Daley*, 29 N.E.3d 1108, 1111, *appeal denied*, 39 N.E.3d 1000 (2015). Thus, these immunity defenses are properly considered on a Rule 12(b)(6) motion to dismiss.

16

### 2. The LLCC's Denial of Exterior Liquor Sales Permit and the City's Termination of Right-of-Way Encroachment License

Section 2-206 of the ILTA provides that "[a] public employee is not liable for an injury caused by his issuance, denial, suspension or revocation of . . . any *permit, license*, certificate, approval, order or similar authorization . . . ." 745 ILCS 10/2-206 (emphasis added). Thus, Kaptain and Cogley cannot be held liable in tort for any involvement they had in the LLCC's denial of the Gasthaus's exterior liquor sales *permit* and the City's termination of the Gasthaus's right-of-way encroachment *license*.

### 3. Kaptain's and Cogley's Actions on the LLCC

The doctrine of judicial immunity also covers and precludes suit based on the allegations of retaliatory conduct by Kaptain and Cogley in relation to their work on the LLCC, including their involvement in the LLCC's denial of the Gasthaus's exterior liquor sales permit application and their alleged inflammatory statements to the Plaintiffs. *Killinger*, 389 F.3d at 770 (conferring absolute judicial immunity on Illinois local liquor control commissioners in license decisions); *Briscoe*, 663 F.2d at 722 ("The doctrine of judicial immunity[] extends to all acts performed by judges in their judicial capacity."); *Richman v. Sheahan*, 270 F.3d 430, 435 (7th Cir. 2001) (extending judicial immunity to other officers integrally related to the judicial process). Though there are other allegations of unlawful tortious conduct performed by the City, the Complaint does not specify what—if any—involvement Kaptain and Cogley had in these actions. Thus, the state law civil conspiracy claim must be dismissed as to Kaptain and Cogley.

### C. The City

Finally, with respect to the City, the ILTA confers corresponding immunities to those that exist for public employees for "local public entities." 745 ILCS 10/2-103 ("A local public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to

enforce any law."); 745 ILCS 10/2-104 ("A local public entity is not liable for an injury caused by his issuance, denial, suspension or revocation of . . . any permit, license, certificate, approval, order or similar authorization . . . ."); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Thus, the City is immune from liability in tort for all of Kaptain's and Cogley's allegedly retaliatory conduct discussed above, which was performed in their municipal roles.

With respect to any other allegations of tortious conduct by the City, for conspiratorial liability to inure, there must be an agreement between two or more persons or entities to effectuate an unlawful purpose or a lawful purpose by unlawful means. *Buckner*, 694 N.E.2d at 571. The Complaint's theory of civil conspiracy is predicated on the existence of an agreement between Capstone Defendants, Souyoul Defendants, and the City. This Court has dismissed the civil conspiracy allegations against Capstone and Souyoul Defendants. Thus, as the Complaint fails to allege another person or entity with whom the City conspired, the civil conspiracy claim against the City must also be dismissed.

## CONCLUSION

For the foregoing reasons, City Defendants' Motion to Dismiss (Dkt. No. 20) is granted in part and denied in part. The motion is granted with respect to both claims against David Kaptain, William A. Cogley, and Terry Gavin. With respect to the City of Elgin, the motion is denied as to the §1983 claim in Count I, but granted as to the civil conspiracy claim in Count II. Capstone Defendants' Motion to Dismiss (Dkt. No. 23) and Souyoul Defendants' Motions to Dismiss (Dkt. Nos. 35, 69) are granted in their entirety. All dismissals are without prejudice. Plaintiffs shall have 28 days to amend the Complaint to remedy these pleading deficiencies, if they are able to do so consistent with the requirements of Federal Rule of Civil Procedure 11.

ENTERED:

Dated: September 29, 2016

Andrea R. Wood
United States District Judge